**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ELAINE L. CHAO, SECRETARY OF LABOR, | ) ) ) | CASE NO.3:O4CV7396 |
| Plaintiff, | ) ) | JUDGE CHRISTOPHER A. BOYKO |
| Vs. | ) ) | |
| KENNETH L. MEGGITT, | ) ) | OPINION AND ORDER |
| Defendant. | ) | |

### CHRISTOPHER A. BOYKO, J:

This matter is before the Court on Defendant's alleged violations of the Migrant and Seasonal Agricultural Protection Act [MSPA], 29 U.S.C. § 1801, et. seq. Plaintiff's Complaint alleges Defendant violated the MSPA §§ 201(c) and 203(a) and (b). Plaintiff seeks a permanent injunction against Defendant's further violations of the MSPA, and payment of the monetary penalty assessed Defendant by the Department of Labor. Defendant failed to respond to Plaintiff's Request for Admissions; upon motion of Plaintiff, this Court deemed the facts contained therein admitted. Plaintiff is now before the Court seeking summary judgment in favor of the government.

1

## **FACTS**

Defendant owns and operates a farm at 6458 East State Route 6, Vickery, Ohio, 43464. During the summer of 2003, Defendant employed migrant workers who lived at 2020 CR 280, Vickery, Ohio; an unlicensed migrant labor camp owned by Defendant. In August 2003, Defendant was cited and fined nineteen-thousand two-hundred dollars for violations of §§ 201(c) and 203(a) and (b) of the MSPA for:

> failing to post in a conspicuous place or present to migrant agricultural workers a statement of the terms and conditions of occupancy of housing provided; failing to ensure that housing for migrant agricultural workers complies with substantive federal and state safety and health standards applicable to that housing; and, permitting housing to be occupied by migrant agricultural workers where no state or local health authority has certified that the facility or property meets applicable safety and health standards.

(Pl.'s Compl. at ¶¶ V, VI.) Defendant neither contested the determination, nor paid the fine.

In addition to the above, on November 4, 2005, the following facts were deemed admitted by court order:

1. Defendant was assessed and paid a penalty of $400 for violation of the MSPA on September 24, 2001.
2. During the summer of 2003, Rita Alanes, her husband, Diana Mendez, and Armando Alanes were employed as workers on Defendant's farm and lived at the unlicensed migrant labor camp owned by Defendant at 2020 CR 280, Vickery, Ohio.
3. The Alanes', and Diana Mendez were permanent residents of Texas during the summer of 2003.
4. The housing at 2020 CR 280 did not have running water during the summer of 2003 and was closed by county health officials in the summer of 2003.
5. Defendant was assessed a civil money penalty of $19,200 on September 30, 2003.
6. Defendant refused certified mail service of the penalty letter dated September 20, 2003, and Richard Blaylock, Assistant Director of the Wage and Hour Division left a copy of the letter at Defendant's residence on October 15, 2003.
7. Defendant did not contest the September 30, 2003 penalty letter within thirty days of October 15, 2003.

## **LAW AND ANALYSIS**

**1. Summary Judgment**

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A fact is not material unless it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 248 (1986). An opponent of a motion for summary judgment may not rely on the mere allegations of the complaint, but must set forth specific facts showing a genuine issue for trial. *Id*. When no reasonable jury could return a verdict for the non-moving party, no genuine issue exists for trial. *Id*. However, in evaluating a motion for summary judgment, the court must draw all inferences from the facts in the light most favorable to the non-moving party. *Gen. Elec. Co. v. G. Siempelkamp GmbH & Co.*, 29 F.3d 1095, 1097-98 (6th Cir. 1994).

**2. Requests for Admissions**

Rule 36(b) governs admissions, and provides: "Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admisson." Fed. R. Civ. P. 36(b). The Sixth Circuit has held "matters inconsistent with admissions conclusively established under Rule 36 cannot be considered by the [c]ourt in ruling upon [a] [m]otion for [s]ummary [j]udgment." *First Bank of Marietta v. Harford Underwriters Insurance Co.*, 198 F.3d 245 (6th Cir. 1999) (unpublished opinion) (quoting *Haun v. Humana Inc.*, 651 F.Supp. 120 (W.D. Ky 1986) (internal cites omitted). Furthermore, "an admission that is not withdrawn or amended cannot be rebutted by contrary testimony or ignored by a district court." *Metzler v. Lykes*, 972 F.Supp. 1438, 1443 (S.D. Fla. 1997) (quoting *American Auto Ass'n*

*v. AAA Legal Clinic of Jefferson Crooke*, P.C., 930 F.2d 1117, 1120 (5th Cir. 1991).

**3. Permanent Injunctions**

In order to show she is entitled to a permanent injunction, Plaintiff must:

demonstrate (1) success on the merits of [Plaintiff's] claim; (2) that [Plaintiff] will suffer irreparable harm in the absence of an injunction and has no adequate remedy at law; (3) the threatened injury to the [P]laintiff outweighs any injury the [D]efendant will suffer if the Court grants an injunction; and (4) an injunction will not harm the public interest.

*Metzler*, 972 F. Supp. at 1445; *Plummer v. American Inst. Of Certified Pub. Accountants*, 97 F.3d 220, 229 (7th Cir. 1996). The Sixth Circuit focuses the inquiry on the second prong of the above test, emphasizing "[a] party seeking an injunction must show that irreparable injury will result if the injunction is not granted, for which no adequate legal remedy is available." *City of Parma, Ohio v. Levi*, 536 F.2d 133, 136 (6th Cir. 1976). The Sixth Circuit reviews the trial court decision for abuse of discretion. *Spignola v. Village of Granville*, 39 Fed.Appx. 978, 980 (6th Cir. 2002) (unpublished).

The injunction requested merely requires Defendant to comply with the law. Furthermore, Section 502 of the MSPA authorizes injunctions as a statutory remedy. Plaintiff has demonstrated success on the merits of its claim. Plaintiff has further demonstrated that monetary penalties are not sufficient deterrent to prevent repeated violations as the penalties assessed in 2001 did not deter further violations now before this Court. The public's interest in protecting those members of society in the lower economic strata from exploitation far outweighs any potential injury to Defendant in requiring compliance. Therefore, the Court grants Plaintiff's Motion for Permanent Injunction.

**4. The Migrant and Seasonal Agricultural Worker Protection Act [MSPA]**

### a. Posting Requirements Imposed Upon Employers

Section 201(b) of the MSPA requires agricultural employers which employ any migrant agricultural workers to "post in a conspicuous place a poster provided by the Secretary [of Labor] setting forth the rights and protections afforded such workers . . . ." 29 U.S.C. § 1821(b). Other courts have held an agricultural employer is not relieved of its obligation to post the information even if the Department of Agriculture may not have mailed the poster. *Calderon v. Witovet*, 764 F.Supp. 536 (C.D. Ill 1991).

### b. Safety and Health of Housing

Section 203(a) of the MSPA requires "each person who owns or controls a facility or real property which is used as housing for migrant agricultural workers" to ensure the "facility or real property complies with substantive Federal and State safety and health standards." 29 U.S.C. § 1823(a). An agricultural employer is deemed an owner of a housing facility or real property if the employer has "a legal or equitable interest in such facility or real property." 29 C.F.R. § 500.130(b) (2005). Other courts have found violations of the MSPA where agricultural workers slept in a van parked on farm premises, or outside a packing house. *Avila v. A. Sam & Sons*, 856 F.Supp. 763 (W.D.N.Y. 1994).

As relates to this action, substantive Federal and State safety and health standards defined by the MSPA:

> include, but are not limited to, those that provide fire prevention, and adequate and sanitary supply of water, plumbing maintenance, structurally sound construction of buildings, effective maintenance of those buildings, provision of adequate heat as weather conditions require, and reasonable protections for inhabitants from insects and rodents. Substantive housing standards do not include technical or procedural violations of safety and health standards.

29 C.F.R. § 500.133 (2005).

Section 203(b) of the MSPA provides "no facility or real property may be occupied by any migrant agricultural worker unless either a state or local health authority or other appropriate agency has certified that the facility or property meets applicable safety and health standards." 29 U.S.C. § 1823(a). Furthermore, the owner or person who controls such property may not permit it to be occupied by any migrant agricultural worker unless a copy of the certificate of occupancy is posted at the cite; the receipt and posting of the certificate will not relieve the owner or person in control of the property of the responsibilities of subsection (a). 29 U.S.C. § 1823(b)

**c. Penalties for Violations and Procedures for Enforcement**

Section 503(a)(1) and (2) of the MSPA provides that "any person who commits a violation of this chapter . . . may be assessed a civil money penalty of not more than $1,000 for each violation, . . . tak[ing] into account (A) the previous record of the person in terms of compliance with this chapter . . . and (B) the gravity of the violation. 29 U.S.C. § 1853(a)(1), (2).[1] Subsection (b) entitles any person assessed a civil money penalty for violations to an

---

[1] The Code of Federal Regulations, Wage and Hour Division, Department of Labor, weighs in on the issue of civil money penalty assessments as well:
§ 500.143(b) In determining the amount of penalty to be assessed for any violation of the [MSPA] the Secretary [of Labor] shall consider the type of violation committed and other relevant factors, including but not limited to the following:
(1) Previous history of violation or violations . . . ;
(2) The number of workers affected by the . . . violations;
(3) The gravity of the . . . violations;
(4) Efforts made in good faith to comply with the [MSPA] . . . ;
(5) Explanation of person charged with the . . . violations;
(6) Commitment to future compliance, taking into account the public health, interest or safety, and whether the person has previously violated the [MSPA];
(7) The extent to which the violator achieved a financial gain due to the violation. Or the potential financial loss or potential injury to the workers.
29 C.F.R. § 500.143 (2005).

agency hearing, "upon request made within thirty days after the date of issuance of the notice of assessment. . . . If no hearing is requested . . . the assessment shall constitute a final and unappealable order." 29 U.S.C. § 1853(b)(1). Subsection (d) states the Secretary of Labor shall, "[i]f any person fails to pay an assessment after it has become a final and unappealable order, . . . recover the amount assessed by action in the appropriate United States district court. In such action the validity and appropriateness of the final order imposing the penalty shall not be subject to review." 29 U.S.C. § 1853; *U.S. v. Meza*, 498 F.Supp. 385, 385 (S.D. Fla. 1980).[2]

**5. Defendant's Memorandum for Opposing Motion for Summary Judgment**

Defendant's opposition to Plaintiff's Motion for Summary Judgment is based entirely on Defendant's dispute of facts deemed admitted. As outlined above, although all facts must be evaluated in a light most favorable to the nonmovant on a motion for summary judgment, the Court may not ignore Rule 36 admissions by considering matters inconsistent with, or testimony contrary to, those facts admitted..

Defendant's claim, in his Memorandum of Opposition, that he did not operate an unlicensed migrant labor camp because the workers for his farm were camping on his property, directly contradicts his admission. For that reason, this Court cannot consider this claim in its decision whether to grant summary judgment. Defendant's argument that no license was required fails for the same reason–it directly contradicts his admission that he did operate an unlicensed migrant labor camp. As outlined above, other courts have found violations of the MSPA where migrant workers live in a van parked on the agricultural employer's property, *Avila, supra*; thus,

---

[2] Enactment of Pub.L. 97-470, Jan. 14, 1983, the Migrant and Seasonal Agricultural Worker Protection Act, repealed chapter 52 (section 2401 et. seq.) of Title 7, Agriculture.

even were this Court to consider Defendant's "camping" argument it is still justified in finding no material issue of fact exists by which a reasonable jury could find in favor of Defendant.

Defendant does not argue he failed to appeal the civil money penalty within the thirty-day requirement set forth in the regulations; instead, he claims the penalty is "arbitrary, unreasonable, and unconscionable." (Def.'s Mem. Opp.'g Mot. Sum. J. p. 2) As outlined above, the MSPA provides for civil money penalties of up to $1000 per violation, based on considerations of Defendant's prior conduct and the seriousness of the violations, among other considerations. Plaintiff's penalty assessment is supported by affidavits from an investigator and assistant district director of the Wage and Hour Division of the Employment Standards Administration, United State Department of Labor attesting to the investigation and the conclusion that Defendant's acts violated the MSPA. Also, Defendant admits to a prior violation of the MSPA in 2001. Finally, Plaintiff attached a MSPA CMP Computation Summary Sheet [MSPA Sheet] consisting of seven pages containing sixty line item housing violations.

A brief review of the MSPA Sheet shows numerous serious health and safety violations, such as no sanitary facilities for storing and preparing food; no refrigeration; no enclosures for cooking facilities; no running water for drinking, bathing or cleaning dishes; sewer lines and drains not connected to available public sewers; amongst others. (ECF Doc. # 20-5.) Each violation was individually valued; those violations deemed marginal were assessed no fines, while those deemed "Serious/Uncorrected" were assessed $350 fines, and those deemed "Aggravated/Uncorrected" were assessed $500 fines. Even ignoring the statutory language which expressly prohibits the district court from assessing the validity and appropriateness of the final order, the list is lengthy and consists of serious health and safety violations. Defendant was

afforded the opportunity through administrative proceedings to contest the violations or appeal the fine, and admits he failed to do either. He is not now permitted to come forward and attack the validity of the administrative procedures.

Therefore, the Court finds Plaintiff is entitled to Summary Judgment on all claims and finds for Plaintiff in the amount of Nineteen Thousand Two Hundred Dollars plus costs and interest.  Furthermore, Defendant, his agents, servants, employees, and those persons inactive concert or participation with them are permanently enjoined and restrained from violating the provisions of Sections 201 and 203 of the MSPA.

IT IS SO ORDERED.


 August 4, 2006                                          s/Christopher A. Boyko                       
 Date                                                   CHRISTOPHER A. BOYKO
                                                        United States District Judge